1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

GREG BASKOVICH, et al.,

    Plaintiffs,

  v.

JFC CORP., et al.,

    Defendants.

Case No.  22-cv-01476-BLF

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

[Re:  ECF Nos. 73]

   This case arises from a business relationship that fell apart.  Plaintiffs Greg Baskovich and his company Grateful Papers bring claims ranging from breach of contract to conversion against Defendants JFC Tobacco Corporation and JPG Herbals, LLC.  Before the Court is Defendants' motion to dismiss the Plaintiffs' First Amended Complaint.  Mot., ECF No. 73.  Plaintiffs oppose.  Opp'n, ECF No. 93.  Defendants have filed a reply.  Reply, ECF No. 95.  The Court heard oral argument on the motions on June 29, 2023.

   For the reasons stated on the record and below, the motion is GRANTED IN PART AND DENIED IN PART.

## I. BACKGROUND

### A. The Parties Meet and Enter into the Product Supply Agreement and the Employment Agreement

   Greg Baskovich is a former sales representative for tobacco and food product companies.  First Am. Compl. ("FAC") ¶ 12, ECF No. 71.  Baskovich has twenty-five years of experience in marketing tobacco and other smoking products, and in distributing and selling those products through a network of wholesalers, distributors, and retail sellers he developed.  *Id.* ¶ 15.

   In 2016, Baskovich met Paola Fernandez at a tobacco industry trade show.  *Id.* ¶ 16.  Paola

United States District Court
Northern District of California

1  Fernandez was attempting to sell wraps used for smoking cannabis.[1]  *Id.*  Paola Fernandez's wraps

2  differed from traditional wraps because they were made from hemp rather than processed tobacco.

3  *Id.*

4      At the time, Paola Fernandez was importing and distributing her wraps using two

5  companies that she co-owned with her sister, Gabriela Fernandez, and their father.  *Id.* ¶¶ 17, 18.

6  The first company, JFC Tobacco Corporation, imported the wraps from the Dominican Republic.  *Id.*

7  ¶¶ 6, 17.  The second company, JPG Herbals, LLC, distributed the wraps under the "High Hemp"

8  brand name.  *Id.* ¶¶ 7, 18.  The Fernandez sisters are officers, directors, and shareholders of JFC

9  Tobacco and are managers and members of JPG Herbals.  *Id.* ¶ 19.

10     Also in 2016, Paola Fernandez asked Baskovich to be a brand manager for High Hemp wraps

11  and oversee their distribution nationwide.  *Id.* ¶ 21.  Baskovich agreed but asked to be granted the

12  exclusive right to distribute and sell High Hemp wraps in California, Nevada, and Arizona and the

13  non-exclusive right to distribute outside those states.  *Id.*

14     On December 15, 2016, JFC and Mr. Baskovich's company, Grateful Papers Distributing, Inc.,

15  ("Grateful Papers"), entered into a Product Supply Agreement ("PSA").  *Id.* ¶ 22 & Ex. A ("PSA").

16  JFC Tobacco and Baskovich entered into a separate Employment Agreement the next month.  *Id.* ¶ 25

17  & Ex. B ("Employment Agreement").

18  **B.   Conduct Related to the Employment Agreement**

19      **1.   JFC Defers Commission**

20     Under the Employment Agreement "[a]ll sales incurred by [Baskovich] outside of [California,

21  Arizona, and Nevada], shall be compensated with a 4.5% fee for the total amount of the invoice

22  excluding all shipping and handling cost."  *Id.* § 3(a).

23     Beginning in the spring of 2017, Baskovich negotiated multiple orders for High Hemp wraps

24  with customers located outside California, Nevada, and Arizona, and submitted those orders to

25  defendant JFC Tobacco for billing and fulfillment.  FAC ¶ 75.  Paola Fernandez, acting on behalf of

26  _____

27  [1] The FAC contains allegations concerning both Paola Fernandez and her sister Gabriela

28  Fernandez.  The Court uses their first names in this order for clarity.

2

JFC Tobacco, requested on multiple occasions up to and including 2021 that Baskovich defer his commission from JFC Tobacco.  *Id.* ¶¶ 77-79.  Baskovich granted these requests.  *Id.* ¶ 77.

### 2.  Plaintiffs Make Direct Sales Outside of California, Arizona, and Nevada

Under the Employment Agreement, "[Baskovich] must only sell directly to the states of California, Arizona, and Nevada."  Employment Agreement § 2(b)(i).  However, as noted above, the employment agreement states that JFC must pay Mr. Baskovich a commission on sales incurred outside of California, Arizona, and Nevada.  *Id.* § 3(a).

Mr. Baskovich understood these provisions to mean that could make direct sales in California, Arizona, and Nevada and indirect sales outside of these states.  FAC. ¶¶ 90, 93.  Baskovich understood indirect sales to be sales that he negotiated, and JFC Tobacco billed and fulfilled.  *Id.*  Baskovich made indirect sales to buyers in New York, Michigan, Texas, and North Carolina between March and August 2017.  *Id.* ¶ 94.  JFC Tobacco fulfilled every indirect sale Baskovich made.  *Id.* ¶ 95.

In fall 2017, in a meeting in Visalia, California, the Fernandezes asked Baskovich and Grateful Papers to take over direct sales of High Hemp Wraps.  *Id.* ¶ 97.  They also asked Baskovich to serve as "Sales Director" for JFC Tobacco and JPG Herbals.  *Id.*  The Fernandez Sisters told Baskovich that he would be paid a 4.5% commission on direct sales occurring outside of California, Nevada and Arizona.  *Id.* ¶ 99.

Subsequently, the Fernandez sisters and employees of JPG Herbals referred customers— including customers outside California, Nevada and Arizona—to Baskovich and Great Papers for order negotiation, invoicing, and fulfillment.  *Id.* ¶ 101.

### C.  Conduct Related to the PSA

#### 1.  Plaintiffs Make Off-Price Sales

Attached to the PSA is a price list that "act[s] as a strict pricing guideline for [Grateful Papers] to follow when selling [certain] products."  PSA § 7.  The PSA states that "[i]f [Grateful Papers] fails to follow this pricing guideline, [JFC Tobacco] will terminate distribution and all contracts with [Grateful Papers]."  *Id.*

Despite this provision, JFC Tobacco authorized Plaintiffs to make multiple "off-price sales"—sales at prices that deviate from those in the price list.  FAC ¶¶ 89-86.  For example, JFC

United States District Court
Northern District of California

Tobacco authorized promotional off-price sales on at least two occasions in 2020. *Id.* ¶ 84. And JFC Tobacco authorized off-price sales involving large orders on at least two occasions in 2021. *Id.* ¶ 83. JFC Tobacco also proposed selling product at a discount to help offload excess inventory. *Id.* ¶ 85. Plaintiffs allege that they "relied upon authorizations and approvals from JFC Tobacco in deviating from the minimum pricing in the Price List." *Id.* ¶ 86.

### 2. JFC Terminates the PSA

On December 29, 2021, JFC Tobacco sent Grateful Papers a letter terminating the PSA. *Id.* ¶ 116. The purported basis for the termination was that Grateful Papers had breached the PSA by deviating from price list. *Id.* As a result of the termination, Plaintiffs were forced to cancel pending orders and lost over $10,000 in marketing expenditures. *Id.* ¶ 118.

### D.   JPG Herbals Diverts Grateful Paper's Product

During the terms of the PSA and Employment Agreement, JPG Herbals continued to sell wraps and other products. *Id.* ¶ 40. To secure inventory for its sales, JPG Herbals diverted products from inventory that Grateful Papers owned and had purchased from JFC Tobacco. *Id.* ¶ 41. Paula and Gabriela Fernandez promised that JFC Tobacco or JPG Herbals would pay for the diverted products, but neither company ever did. *Id.* ¶¶ 43, 46. From about November 2017 through October 2021, Plaintiffs sent invoices to Paula and Gabriela Fernandez and JPG Herbals for the diverted products. *Id.* ¶ 44. Those invoices total approximately $98,684.19. *Id.* ¶ 44 & Ex. C.

### E.   This Action

On March 8, 2022, Plaintiffs filed their Complaint in this Court. Defendants moved to dismiss the complaint. Compl., ECF No. 1. The Court issued an order granting in part and denying in part Defendants' motion to dismiss. Order, ECF No. 67.

On January 6, 2023, Plaintiffs filed their FAC asserting nine claims for relief but later stipulated to dismissal of one of those claims.[2] *See* Order Granting Stip., ECF No. 87. Plaintiffs now assert the following claims:

---

[2] The parties stipulated to dismissal of Claim 5. Order Granting Stip., ECF No. 87.

1. Claim 1: Breach of the PSA against JFC;

2. Claim 2: Breach of the Employment Agreement against JFC;

3. Claim 3: Account stated against all Defendants;

4. Claim 4: Conversion against all Defendants;

5. Claim 6: Promissory estoppel against JFC concerning conduct related to the PSA;

6. Claim 7: Promissory estoppel against JFC concerning conduct related to the Employment Agreement;

7. Claim 8:  breach of implied covenant of good faith and fair dealing against JFC; and

8. Claim 9: declaratory judgment against JFC.

Compl. ¶¶ 122-191.

## II.   DISCUSSION

Defendants move to dismiss on two grounds.  First, Defendants move to dismiss all claims asserted against JPG Herbals Florida under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.  Second, Defendants move to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  The Court first addresses Defendants' jurisdictional challenge under Rule 12(b)(2) and then addresses their substantive challenge under Rule 12(b)(6).

### A.   Motion to Dismiss JPG Herbals Under Federal Rule of Civil Procedure 12(b)(2) for Lack of Personal Jurisdiction

Plaintiffs bring one claim against JPG Herbals—a claim for conversion of Grateful Papers's property.  Defendants move to dismiss that claim for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).

#### 1.   Legal Standard

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)).  California's long-arm statute is coextensive with federal due process requirements. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-01 (9th Cir. 2004). "Although a nonresident's physical presence within the territorial jurisdiction of the court is not

5

1    required, the nonresident generally must have 'certain minimum contacts . . . such that the

2    maintenance of the suit does not offend traditional notions of fair play and substantial

3    justice.'"  *Walden*, 571 U.S. at 283 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316

4    (1945)).

5         A federal district court may exercise either general or specific personal jurisdiction over a

6    nonresident defendant.  *Daimler*, 571 U.S. at 127.  General personal jurisdiction exists when the

7    defendant's contacts "are so continuous and systematic as to render [it] essentially at home in the

8    forum State."  *Id.* (internal quotation marks and citation omitted).  Specific personal jurisdiction

9    exists when the defendant's contacts with the forum state are more limited but the plaintiff's

10   claims arise out of or relate to those contacts.  *Id.* at 127-28.

### 2.  Discussion

12       Plaintiffs argue that JPG Herbals is subject to specific personal jurisdiction in this Court.

13   Opp'n 20.  The Ninth Circuit has established a three-prong test for whether a court can exercise

14   specific personal jurisdiction over a non-resident defendant: (1) the defendant "must purposefully

15   direct his activities or consummate some transaction with the forum or resident thereof; or perform

16   some act by which he purposefully avails himself of the privilege of conducting activities in the

17   forum, thereby invoking the benefits and protections of its laws"; (2) "the claim must be one

18   which arises out of or relates to the defendant's forum-related activities"; and (3) "the exercise of

19   jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable."

20   *Schwarzenegger*, 374 F.3d at 802.  The plaintiff bears the burden on the first two prongs.  *Id.*  "If

21   the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the

22   forum state."  *Id.*  "If the plaintiff succeeds in satisfying both of the first two prongs, the burden

23   then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not

24   be reasonable."  *Id.* (quotation marks and citation omitted).

### a.  First Prong: Purposeful Availment or Direction

26       Under the first prong of the test for evaluating specific personal jurisdiction, Plaintiffs

27   must show either purposeful availment or purposeful direction by a given Defendant.  "[A]

28   purposeful availment analysis is most often used in suits sounding in contract, whereas a

United States District Court
Northern District of California

6

purposeful direction analysis is most often used in suits sounding in tort." *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 605 (9th Cir. 2018) (quotation marks and citation omitted). Here, the appropriate framework is purposeful direction because Plaintiffs' claim against JPG Herbals is for the tort of conversion. *See, e.g.*, *Dahon N. Am., Inc. v. Hon*, No. 2:11-CV-05835-ODW, 2012 WL 1413681, at *3 (C.D. Cal. Apr. 24, 2012).

When the location of the allegedly tortious conduct occurred outside of the forum state, purposeful direction is evaluated under the "effects" test from *Calder v. Jones*, 465 U.S. 783 (1984). *Schwarzenegger*, 374 F.3d at 803. The *Calder* "effects" test requires that the defendant has: (1) committed an intentional act; (2) expressly aimed the act at the forum state; and (3) caused harm that the defendant knew was likely to be suffered in the forum state. *Id.*

When, however, an intentional tort is committed within the forum state, "[*Paccar Int'l, Inc. v. Commercial Bank of Kuwait, S.A.K.*, 757 F.2d 1058 (9th Cir. 1985)], not *Calder*, is the proper starting place where an intentional tort is committed within the forum state." *Freestream*, 905 F.3d at 606. Under *Paccar*, "[t]he commission of an intentional tort in a state is a purposeful act that will satisfy the first two requirements [of the minimum contacts test]." *See id.* at 603 (quoting *Paccar*, 757 F.2d at 1064).

Here, Plaintiffs allege that the tortious conduct—conversion of its inventory—occurred in Florida. [3] FAC ¶ 41 ("diversion of product typically occurred at the Port of Miami"). Accordingly, the Court applies the *Calder* effects test to analyze personal jurisdiction.

### i. Intentional Act

A defendant performs an intentional act when he "acts with the 'intent to perform an

---

[3] Plaintiffs also allege that "Grateful Papers was asked by the Fernandez sisters and/or JPG Herbals to send them wraps and other products from Grateful Papers' warehouses in [California]." FAC ¶ 41. But it appears that Plaintiffs' conversion claim is not based on products located in California. And Plaintiffs do not argue under *Paccar* that tortious conduct occurred in California. Rather they argue that *Calder* applies because the alleged tortious conduct "principally occurred in Florida." Opp'n 21; Baskovich Decl. ¶¶ 14-16, ECF No. 93-1.

United States District Court
Northern District of California

actual, physical act in the real world.'" *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015) (quoting *Schwarzenegger*, 374 F.3d at 806). Here, Plaintiffs allege that JPG Herbals "pulled" products from Grateful Papers's inventory to fulfill JPG Herbals's own orders. FAC ¶ 41. According to Plaintiffs, JPG promised to pay for the products but never did. FAC ¶¶ 43, 46. JPG Herbals's alleged that the taking of Grateful Papers's product and failure to pay for it is an intentional act. Plaintiffs have thus plausibly alleged the first element of the "effects" test.

### ii.    Expressly Aimed at the Forum State

The second element of the test, "express aiming," asks whether the defendant's allegedly tortious action was "expressly aimed at the forum." *Picot*, 780 F.3d at 1214. "Express aiming is an ill-defined concept that we have taken to mean something more than a foreign act with foreseeable effects in the forum state." *Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 577 (9th Cir. 2018) (internal quotations omitted).

Plaintiffs' allegations and evidence sufficiently show that JPG Herbals aimed its conduct at California. Plaintiffs allege that the JPG Herbals took $98,684.19 worth of Plaintiffs' inventory while it was being held at the Port of Miami pending shipment to Grateful Papers warehouses in California. FAC ¶¶ 41, 44. Baskovich confirms this allegation in a declaration. Baskovich Decl. ¶ 12, ECF No. 12. JPG Herbals would have known that these products were en route to California, as JPG Herbals's owners, managers, and members were also the owners, directors, and officers of JFC Tobacco—the company that sold and shipped Plaintiffs the products. *See* FAC ¶ 19; *see also* Baskovich Decl. ¶¶ 8, 9. This uncontroverted evidence establishes that JPG Herbals took product that it knew to be destined for California and thus expressly aimed its conduct at the forum. *Cf. Pakootas*, 905 F.3d at 578 (concluding that Defendant expressly aimed its conduct at forum where it dumped waste into river that it knew would carry the waste into the forum). Moreover, Baskovich states he met with Paola and Gabriela—the owners and members of JPG Herbals—in California to discuss the allegedly taken inventory. Baskovich Decl. ¶ 18, 24. Taken together, the Court these allegations and evidence satisfy the second element of the "effects" test.

### iii.    Harm Likely to be Suffered in Forum State

The third and final element of the "effects" test is whether the defendant knew that the

1    harm was likely to be suffered in the forum.  *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th

2    Cir. 2002).  There is foreseeable harm when a jurisdictionally sufficient amount of harm is

3    suffered in the forum state.  *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433

4    F.3d 1199, 1207 (9th Cir. 2006).  This standard may be satisfied even where the bulk of the harm

5    occurs outside of the forum.  *Id.* (citing *Keeton v. Hustler Magazine*, 465 U.S. 770, 780 (1984)).

6         The third prong of the *Calder* effects test is satisfied here.  Plaintiffs allege and provide

7    evidence that JPG Herbals took product that was en route to Grateful Papers' California

8    warehouses.  *See* FAC ¶¶ 41, 44; Baskovich Decl. ¶ 12.  Plaintiffs also allege and provide

9    evidence that JPG Herbals knew that this product was headed to California.  *See* FAC ¶ 19; *see*

10   *also* Baskovich Decl. ¶¶ 8, 9.  Plaintiffs have therefore alleged and provided evidence that JPG

11   Herbals knew that the harm was likely to be suffered in the forum.  These allegations and evidence

12   satisfy the third element of the "effects" test.

13        **b.  Second Prong:  Arises Out of Or Relates To**

14        Having determined that Plaintiffs have shown that JPG Herbals purposefully directed its

15   activities toward California, the Court analyzes whether that claim arise out of or relates to JPG

16   Herbals's forum-related activities.  *See Schwarzenegger*, 374 F.3d at 802.  "The Ninth Circuit

17   relies on a 'but for' test to determine whether a particular claim arises out of forum-related

18   activities and thereby satisfies the second requirement for specific jurisdiction."  *Enertrode, Inc. v.*

19   *Gen. Capacitor Co. Ltd.*, No. 16-CV-02458-HSG, 2016 WL 7475611, at *5 (N.D. Cal. Dec. 29,

20   2016) (quoting *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995)) (internal quotation marks

21   omitted).

22        Here, Plaintiffs' alleged harm arises out of JPG Herbals's alleged conversion of their

23   products.   But for the alleged conversion, Plaintiffs would either have their products or the

24   $98,684.19 JPG Herbals promised to pay for those products.  *See* Compl. ¶¶ 41, 44, 46.  These

25   allegations satisfy the second prong of the personal-jurisdiction inquiry.

26        **c.  Third Prong:  Reasonableness**

27        Plaintiffs have established the first two prongs of the analysis as to their conversion claim

28   against JPG Herbals.  The burden therefore shifts to JPG Herbals to "present a compelling case"

United States District Court
Northern District of California

9

that the exercise of personal jurisdiction would not comply with fair play and substantial justice. *Schwarzenegger*, 374 F.3d at 802.  The Ninth Circuit analyzes seven factors to determine reasonableness:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Menken v. Emm*, 503 F.3d 1050, 1060 (9th Cir. 2007).

JPG Herbals argues that it would be unreasonable to assert jurisdiction over it because the claim against JPG Herbals "revolve[s] primarily if not exclusively" on acts perpetrated in Florida; it would be burdensome for it to defend itself in California; the "real defendant" here is JFC; courts in the Southern District of Florida have a lower caseload and faster time to trial than courts in the Northern District of California; and the forum is not especially important to Plaintiffs, as they agreed to be sued in Puerto Rico and have Puerto Rico law govern their claims.  Mot. 18-19.

These arguments do not present a compelling case given California's interest in adjudicating the allegations that JPG Herbals took almost $100,000 of product from a California company.  The Court therefore concludes that it is appropriate to assert personal jurisdiction over JPG Herbals because it purposefully directed wrongful conduct toward California, and Plaintiffs' claim arises out of that conduct.

Defendants' motion to dismiss for lack of personal jurisdiction is DENIED.

**B.    Motions to Dismiss Claims Under Federal Rule of Civil Procedure 12(b)(6) for Failure to State a Claim**

### 1.    Legal Standard

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).  When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the

plaintiff.  *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).  However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

### 2.  Discussion

Defendants move to dismiss all of Plaintiffs' claims for failure to state a claim under Federal Rule of Procedure 12(b)(6).  The Court addresses each claim in turn.

### a.  Claim 1:  Breach of the Product Supply Agreement

#### i.    Applicable Law

Before turning to the Parties substantive arguments, the Court determines which law governs this dispute.  The PSA contains choice-of-law provision that selects Puerto Rico law. PSA § 23.  Defendants argue that the Court should honor the parties' selection of Puerto Rico law because JFC is a Puerto Rico corporation, California has a strong policy of favoring enforcement of contractual choice-of-law clauses, and Plaintiffs have not demonstrated that California has a materially greater interest in applying its own law to the disputes in this case.  Reply 3-6. Plaintiffs dispute that Puerto Rico law should apply because "Puerto Rico lacks a substantial relationship to the parties and their transaction, and because application of Puerto Rico law would conflict with fundamental public policies of California, including Plaintiffs' right to a jury trial, and California has a materially greater interest in the determination of the issue than Puerto Rico." Opp'n 3-4.

"In determining the enforceability of a choice of law provision in a diversity action, a federal court applies the choice of law rules of the forum state, in this case California."  *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1182 (9th Cir. 2009).  "If the parties state their intention in an

1    express choice-of-law clause, California courts ordinarily will enforce the parties' stated

2    intention." *Id.* (quoting *Frontier Oil Corp. v. RLI Ins. Co.,* 153 Cal. App. 4th 1436, 1450 n.7

3    (2007).  Here, the PSA states the parties' intention to have their dispute governed by Puerto Rico

4    law—specifying that the agreement "shall be governed by the law of the Common Wealth [*sic*] of

5    Puerto Rico."  PSA § 23.

6            "Once it determines the parties' intention, a California state court will next analyze

7    whether: (1) the chosen jurisdiction has a substantial relationship to the parties or their transaction;

8    or (2) any other reasonable basis for the choice of law provision exists."  *Hatfield*, 564 F.3d at

9    1182 (citing *Hughes Elecs. Corp. v. Citibank Del.,* 120 Cal. App. 4th 251, 248 (2004)).  If either

10   one of these tests is met, then a California court will enforce the provision unless the chosen

11   jurisdiction's law is contrary to California public policy.  *Id.*

12           The fact that JFC is a Puerto Rico company is sufficient to establish a substantial

13   relationship between Puerto Rico and the parties, such that there is a reasonable basis for applying

14   the Puerto Rico choice-of-law provision.  *See Hatfield*, 564 F.3d at 1183.

15           Accordingly, the Court must determine whether applying Puerto Rico law here is contrary

16   to California public policy.  The Court finds that it is not.  Plaintiffs argue that applying Puerto

17   Rico law would undermine California's public policy of guaranteeing Plaintiff a right to a jury

18   trial.  Opp'n 3-4.  But "the right to a jury trial in federal courts is to be determined as a matter of

19   federal law in diversity as well as other actions."  *Simler v. Conner*, 372 U.S. 221, 222 (1963).

20   Accordingly, Puerto Rico's law regarding jury trials is irrelevant here and Plaintiffs' argument

21   fails.

22           In light of the foregoing, the Court finds that a California court would enforce the PSA's

23   choice-of-law provision because Puerto Rico has a substantial relationship to the parties and the

24   parties have not identified a relevant aspect of Puerto Rico law that is contrary to California public

25   policy.

26                       **ii.    Analysis of Claim**

27           Plaintiffs allege that JFC breached the PSA by (1) improperly terminating the agreement

28   and ceasing performance and (2) acquiescing to the diversion of products purchased by Grateful

United States District Court
Northern District of California

1    Papers.  FAC ¶¶ 124-25.

2         Defendants argue that Plaintiffs fail to state a claim based on their termination of the

3    agreement because the FAC admits that Plaintiffs made off-price sales, which are prohibited under

4    the plain language of the PSA.  Mot. 5-6.  According to Defendants, these sales triggered the

5    PSA's termination clause and therefore permitted them to terminate the agreement and cease

6    performance.  *Id.*  Plaintiffs do not dispute that that plain language of the PSA prohibits off-price

7    sales.   However, Plaintiffs argue that their off-price sales did not permit JFC to terminate the

8    agreement and stop performance because (1) JFC waived its right to enforce the PSA's prohibition

9    on such sales, Opp'n 4-6; (2) JFC modified the pricing term by email, Opp'n 8; and (3) the

10   doctrine of actos propios prevents JFC from denying that it waived or modified the pricing

11   provision, Opp'n 6-7.

12        Plaintiffs have plausibly alleged that JFC waived enforcement of the pricing provision as

13   to the specific sales alleged in the FAC.  "The doctrine of waiver entails the intentional

14   abandonment or voluntary relinquishment of a right or privilege."  *QBE Seguros v. Morales-*

15   *Vazquez*, No. 15-2091 (BJM), 2018 WL 3763305, at *13 (D.P.R. Aug. 7, 2018) (quoting

16   *Rodriguez de Oller v. Transamerica Occidental Life Ins. Co.*, 2007 TSPR 98, 2007 WL 1723369,

17   at *6 (P.R. May 30, 2007)).  "Waiver may be express or implied, and may be manifested by

18   conduct or by words, or by oral or written statements."  *Rodriguez de Oller*, 2007 WL 1723369, at

19   *6.  Here, each of the alleged deviations from the price list was allegedly accompanied by a

20   written approval or request by JFC.  FAC ¶¶ 83-86.  These writings expressly permitted Plaintiffs

21   to deviate from the price list and thus plausibly suggest that JFC intentionally relinquished the

22   right to terminate the agreement based on the alleged deviations.  Thus, the FAC plausibly alleges

23   that JFC improperly terminated the agreement and ceased performance.

24        Defendants rely on *Westernbank P.R. v. Kachkar*, No. 07-1606 (ADC), 2009 U.S. Dist.

25   LEXIS 153372 (D.P.R. Sep. 17, 2009), to argue that the waivers here were barred by PSA's

26   Modification clause.  In *Westernbank*, the court adopted the magistrate judge's Report and

27   Recommendation (R&R) and held in relevant part that the Defendant had not waived a no-oral-

28   modification clause in the agreement at issue.  *See* 2009 U.S. Dist. LEXIS 153372, at *17.  In

United States District Court
Northern District of California

13

reaching this conclusion, the court acknowledged that "the cases cited by [the magistrate judge] do support the general proposition that Puerto Rico law dictates that the 'no-oral-modification' clauses in contracts cannot be waived orally." *Id.*

But *Westernbank* is distinguishable. As noted in the underlying R&R, the modification clause at issue in *Westernbank* stated that the agreement could be "amended, modified, waived, or discharged" only by written agreement. *Westernbank P.R. v. Kachkar*, 2009 U.S. Dist. LEXIS 153371, at *45 (D.P.R. Mar. 3, 2009). Thus, the agreement in *Westernbank* expressly prohibited "waiver" absent a signed agreement. The primary case cited by both the magistrate judge in the R&R and district judge in the opinion adopting the R&R also involved an agreement that expressly prohibited waiver. *See Nike Int'l, Ltd. v. Athletic Sales, Inc.*, 689 F. Supp. 1235, 1244 (D.P.R. 1988) ("[N]ot only did the contract contain this integrated agreement provision, it also provided that no terms could be waived, changed or otherwise modified except in writing and signed by the party against whom the waiver, change, or modification was to be enforced.").[4] Here, the relevant provision does not expressly bar waiver. It states that the PSA may be "supplemented, amended, or modified" only by a writing signed by the parties. PSA § 21. The Court cannot say at this stage, given the lack of express language, that the PSA clearly bars waivers that fail to comply with its Modification provision. *Cf. Borschow Hosp. & Med. Supplies, Inc. v. Cesar Castillo Inc.*, 96 F.3d 10, 15 (1st Cir. 1996) ("Under Puerto Rican law, an agreement is 'clear' when it can 'be understood in one sense alone, without leaving any room for doubt, controversies or difference of interpretation.").

Defendants also argue that the waivers violate Puerto Rico's prohibition on modifications of signed, written agreements other than by the same formalities observed in the original agreement. *See* Reply 7. This argument fails because Plaintiffs do not argue that the agreement was amended. Rather, they argue that JFC waived enforcement of the Pricing provision for a

---

[4] The other case cited by both magistrate judge and district judge does not expressly analyze contractual waiver. *See Freightliner LLC v. P.R. Truck Sales, Inc.*, 399 F. Supp. 2d 57, 74 (D.P.R. 2005).

United States District Court
Northern District of California

1     limited set of sales.  *See* Opp'n 6.

2         In sum, the Court finds that Plaintiffs plausibly allege that Defendants waived

3     enforcement of the pricing provision as to the sales alleged in the FAC.  Because this is sufficient

4     to render plausible Plaintiffs' claim that JFC impermissibly terminated the agreement and ceased

5     performance, Defendants motion to dismiss this claim is DENIED.

6         The Court does not reach Plaintiffs' alternative theories for why their off-price sales were

7     permitted under the agreement.  Nor does the Court reach Plaintiffs' alternative theory of liability

8     based on JFC's alleged acquiescence to JPG Herbals' alleged diversion of product.

9              **b.  Claim 2:  Breach of Employment Agreement**

10                  **i.     Applicable Law**

11        Like the PSA, the Employment Agreement contains a choice-law-clause that selects Puerto

12    Rico law.  Employment Agreement § 9(a).  The parties do not present independent argument about

13    which law the Court should apply in interpreting the Employment Agreement.  *See* Opp'n 3-4;

14    Reply 3-6.  The parties appear to agree that the Court's analysis in deciding which law to apply in

15    interpreting the Employment Agreement should be the same as the Court's analysis in deciding

16    which law to apply in interpreting the PSA.

17        The Court agrees with the parties' approach.  For the reasons provided above in its analysis

18    of which law governs the PSA, the Court will apply Puerto Rico law in interpreting the

19    Employment Agreement.

20                  **ii.     Analysis of Claim**

21        Plaintiffs allege that JFC breached its Employment Agreement with Mr. Baskovich.  JFC's

22    alleged breaches include (1) refusing pay Mr. Baskovich a 4.5% commission on indirect sales he

23    negotiated with customers outside of California, Nevada, and Arizona and (2) refusing pay Mr.

24    Baskovich a 4.5% commission on allegedly authorized direct sales he negotiated with customers

25    outside of California, Nevada, and Arizona.  *Id.* ¶¶ 130-31.

26        Defendants offer different theories for why Plaintiffs fail to state a claim depending on the

27    date of the relevant sales.  Defendants argue that Defendants cannot state a claim based on sales

28    before fall of 2017 because the statute of limitations for claims on those sales would have run

United States District Court
Northern District of California

1    before Plaintiffs filed this action in March 2022.  Mot. 8.  Defendants argue that Plaintiffs cannot

2    state a claim based on sales after fall of 2017 because the FAC concedes that Baskovich had made

3    direct sales outside of California, Nevada, and Arizona by that time and therefore concedes that

4    Baskovich had breached the Employment Agreement.  Mot. 7.

5         Plaintiffs dispute both arguments.  As to pre-fall-2017 sales, Plaintiffs argue that

6    Defendants should be estopped from invoking a statute-of-limitations defense because Plaintiffs

7    delayed bringing this action based on Defendants' repeated assurances that they would pay

8    Baskovich's commission.  Opp'n 10.  Plaintiffs also argue that the correct statute of limitations is

9    15 years and thus does not bar their sales.  Opp'n 11.  As to post-fall-2017 sales, Plaintiffs argue

10   that Defendants should be estopped from arguing that Baskovich breached the employment

11   agreement based on his direct sales outside of California, Nevada, and Arizona under the doctrine

12   of actos propios and because the Fernandez sisters authorized those sales in writing.  Opp'n 11.

13        The Court first addresses pre-fall-2017 sales.  Defendants challenge the plausibility of

14   claims arising from these sales solely on statute-of-limitations grounds.  *See* Mot. 8.  Under Puerto

15   Rico law, there are three ways in which statutes of limitations can be tolled.  *Rodriguez Narvaez v.*

16   *Nazario*, 895 F.2d 38, 44 (1st Cir. 1990).  Relevant here, one way a statute of limitations is tolled

17   is "by any act of acknowledgement of the debt by the debtor."  *Id.*  "An 'act of acknowledgement

18   of the debt by the debtor' is 'any valid act which actually implies the [debtor's] absolute

19   conformity with the right of the creditor.'"  *Id.* (quoting *Widow of Carlo v. Toro*, 99 P.R.R. 196,

20   207 (1970)).  "The act must communicate the debtor's specific intention of acknowledging the

21   survival of another person's right; it must be spontaneous, unequivocal and clear; and it can never

22   be deduced from acts or conduct from which only indirect inferences can be made as to the

23   debtor's acknowledgement of the effectiveness of the creditor's right."  *Id.* (citing *Díaz de Diana v.*

24   *A.J.A.S. Ins. Co.,* 110 P.R.R. 602, 615 (1980)).

25        Applying these principles, the Court finds that Plaintiffs have plausibly alleged that the

26   statute of limitations was tolled.  Plaintiffs allege that Baskovich negotiated indirect sales outside

27   of California, Nevada, and Arizona.  FAC ¶¶ 75, 94.  Plaintiffs further allege that on multiple

28   occasions up to an including 2021, Paola Fernandez asked Baskovich to hold off in pursuing

United States District Court
Northern District of California

1    payment of his commission on these sales while insisting that JFC Tobacco would pay the

2    commission.  FAC ¶ 76.  These alleged statements are unequivocal and clear acknowledgments of

3    JFC Tobacco's debt to Baskovich.  Thus, at this stage, the Court finds that Plaintiffs have

4    plausibly alleged that the statute of limitations on their claim was tolled at least to January 1, 2021.

5    Because the complaint in this action was filed in March 2022, Plaintiffs' claims for the pre-fall-

6    2017 sales would not be barred under the four-year statute of limitations Defendants endorse.

7         Plaintiffs have stated a plausible claim for breach of the employment agreement based on

8    their pre-fall-2017 indirect sales.  Although this is sufficient to allow the claim to proceed at this

9    stage, the Court briefly addresses the post-fall-2017 direct sales as well.

10        Puerto Rico law recognizes the "doctrina de actos propios," which is loosely translated as

11   the "doctrine of one's own acts."  *CMI Cap. Mkt. Inv., LLC v. Municipality of Bayamon*, 410 F.

12   Supp. 2d 61, 76 (D.P.R. 2006) (citing *Corraliza Rodriguez v. Banco Desarrollo Economico*, 2001

13   TSPR 2, 6 (2001)).  The doctrine "is parallel to the doctrine of estoppel in English law," but "there

14   are differences in their development and content."  *Id.*  "In order to establish liability under this

15   doctrine plaintiff must present evidence of (a) specific conduct, (b) which has brought about an

16   apparent situation contrary to reality and capable of influencing the conduct of others, and (c)

17   another party who has acted in good faith and in reliance thereto would be prejudiced should its

18   trust be defrauded."  *Id.* at 76-77.

19        Here, Plaintiffs plausibly allege conduct that invokes the doctrine.  Plaintiffs allege that

20   "the Fernandez sisters asked Baskovich and Grateful Papers to take over direct sales of High

21   Hemp wraps to all 50 states as well as foreign sales" during a meeting in early fall 2017."  FAC

22   ¶ 97.  According to Plaintiffs, the parties agreed that "Baskovich would act as Defendants' 'Sales

23   Director,' with the right to distribute and sell High Hemp wraps, by direct sale, to customers

24   throughout the United States and abroad."  *Id.*  Further, "Paola Fernandez had business cards

25   prepared for Baskovich that identified him as Defendants' 'Sales Director' and listed an email

26   address, greg@highhempwraps.com, which was hosted on Defendants' highhempwraps.com

27   website."  *Id.* ¶ 98.  These allegations plausibly suggest that Defendants engaged in conduct

28   contrary to the reality of the terms of the Employment Agreement and capable of influencing

United States District Court
Northern District of California

17

1    Baskovich and that Baskovich acted in good faith and in reliance on Defendants' conduct.  Thus,

2    Plaintiffs have alleged conduct that plausibly invokes the doctrine of actos propios.

3            In response, Defendants argue that Plaintiffs cannot rely on the doctrine of actos propios to

4    vary the unambiguous terms of the Employment Agreement.  Reply 8-10.  Defendants contend

5    that Plaintiffs invoke the doctrine of actos propios to evade the Employment Agreement's

6    modification provision, which precludes amendment "unless it is in writing and signed by both

7    parties."  *See* Employment Agreement § 10.  Plaintiffs rely on two cases for the proposition that

8    Plaintiffs cannot invoke the doctrine of actos propios here.  *See id.* at 9 (citing *Triangle Cayman*

9    *Asset Co. v. LG & AC, Corp.*, 52 F.4th 24 (1st Cir. 2022); *Borschow Hosp. & Medical Supplies*,

10   96 F.3d at 15-17).  But neither case discusses the doctrine.  Given the lack of authority from

11   Defendants and their scant briefing on the issue, the Court cannot say at this stage that Plaintiffs'

12   actos propios theory fails as a matter of law.

13           Accordingly, Defendants' motion to dismiss Plaintiffs' claim for breach of the

14   Employment Agreement is DENIED.  The Court does not reach Plaintiffs' argument that its

15   claims should be governed by a 15-year statute of limitations or that the agreement was amended

16   by valid writings.

17                   **c.  Claim 3:  Account Stated**

18           Defendants moved to dismiss Plaintiffs' claim for account stated.  Mot. 12-14.  Plaintiffs

19   expressly stated that they do not oppose dismissal of this claim.  Opp'n 4 n.1.  Accordingly,

20   Plaintiffs' motion to dismiss this claim is GRANTED WITHOUT LEAVE TO AMEND.

21                   **d.  Claim 4:  Conversion**

22                           **i.    Applicable Law**

23           Before turning to the substance of the parties' dispute, the Court briefly addresses which

24   law governs Plaintiffs' conversion claim.  In their opening brief, Defendants present some of their

25   arguments concerning Plaintiffs' conversion claim under Puerto Rico law and some under

26   California law.  *See* Mot. 9-10.  Defendants state in their opening brief that California law should

27   not apply to the claim, but they do not present any substantive argument as to which law should

28   apply.  *Id.* at 9.  In response, Plaintiffs argue that California law or Florida law should govern the

United States District Court
Northern District of California

18

1   claim.  Opp'n 13-14.  They state that the "proper analysis requires examining the interests of the

2   states involved to determine the law that most appropriately applies" but they do not engage in this

3   analysis themselves.  *See Id.*  In their reply, Defendants argue that Plaintiff's conversion claim

4   should be decided under Puerto Rico law because the parties selected Puerto Rico law in their

5   contracts.  *See* Reply 13.

6          The Court finds the briefing inadequate at this stage to determine which law governs

7   Plaintiffs' conversion claim.  Much of Defendants' argument is presented for the first time in their

8   Reply, and Plaintiffs have not had an adequate opportunity to respond.  *Cf. Zamani v. Carnes*, 491

9   F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first

10  time in a reply brief.").

11         However, as will be explained below, the Court finds that none of Defendants' arguments,

12  which are each presented under either Puerto Rico or California law, requires dismissal of the

13  claim.  Accordingly, the Court need not determine which law governs the claim at this stage.

14                          ii.      Analysis of Claim

15         Plaintiffs assert a conversion claim against all Defendants.  Plaintiffs allege that

16  Defendants took products from inventory that Grateful Papers owned without compensation.  FAC

17  ¶ 144-45.

18         Defendants move to dismiss Plaintiffs' conversion claim on four grounds.  First,

19  Defendants argue that the claim cannot survive under Puerto Rico law because the alleged

20  conversion damages "arise as a consequence of non-compliance with a preexisting contract."

21  Mot. 9.  Second, Defendants argue that the claim fails under California law because Plaintiffs have

22  failed to plead a wrongful act—a necessary element of conversion.  *Id.* at 9.  Third, Defendants

23  argue that Plaintiffs claims are "barred, in part, by the applicable statute of limitations."  *Id.* at 10.

24  Fourth, Defendants argue that Plaintiffs' claims are implausible because JPG Herbals did not exist

25  at the time of the alleged conversion.[5]  *Id.* at 10.

26  _____

27  [5] The Court GRANTS Defendants' unopposed request that the Court take judicial notice of JPG

28  Herbals's Articles of Organization, which show a filing date of March 26, 2018 (ECF No. 73-1).

Plaintiffs respond to each argument.  First, Plaintiffs argue that Puerto Rico law recognizes the tort of conversion, and the alleged conversion here arises from a duty independent of any contract.  Opp'n 15-16.  Second, Plaintiffs argue that they have adequately pled a wrongful act—the unauthorized taking of Grateful Papers's property.  Opp'n 16.  Third, Plaintiffs respond that Defendants' statute-of-limitations defense does not require dismissal of the claim because it seeks only to bar certain damages.  *Id.* at 13-14.  Fourth, Plaintiffs argue that even claims arising from product taken before JPG Herbals's purported formation are implausible, the Court should not dismiss their claim because this would only limit damages.  *Id.* at 16.

Defendants first argue that the conversion claim should be dismissed under Puerto Rico law because any alleged conversion damages "arise as a consequence of non-compliance with a preexisting contract."  Mot. 9.  "Conversion in Puerto Rico is an intentional tort, a form of the fault described in Article 1802."[6]  *TLS Mgmt. & Mktg. Servs. LLC v. Rodriguez-Toledo*, 2018 WL 1626100, *12 (D.P.R. Mar. 30, 2018), *rev'd on other grounds*, 966 F.3d 46 (1st Cir. 2020).  Relevant here, under Puerto Rico law, "a party cannot support a conversion claim when 'damages suffered arise as a consequence of non-compliance with pre-existing contract' and plaintiff cannot demonstrate that 'damages also arose from a general (non-contractual) duty not to cause harm.'"  *Id.* at 13 (quoting *Westernbank Puerto Rico v. Kachkar*, No. 07-1606 (ADC/BJM), 2009 WL 6337949, at *33 (D.P.R. Dec. 10, 2009)).  Defendants contend that Plaintiffs claim fails under this

_____

*See* Fed. R. Civ. P. 201(b); *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986) ("on a motion to dismiss a court may properly look beyond the complaint to matters of public record").

[6] Defendants express doubt that a conversion claim "is even cognizable under relevant Puerto Rico civil law."  Mot. 9.  But Defendants do not develop this argument beyond their citation to one case that expressly declines to resolve the issue.  *See Fed. Ins. Co. I.C. v. Banco de Ponce*, 751 F.2d 38, 40 (1st Cir. 1984) ("We have discussed both common law and civil law liability here because we recognize that Puerto Rico's 'conversion' precedents are somewhat ambiguous.").  In the absence of developed argument, the Court cannot say at this stage that that conversion is not a cognizable claim under Puerto Rico law.

1    rule because the duties Defendants allegedly owed to Grateful Papers were contractually defined.

2    Mot. 9.

3           The Court finds that Plaintiffs' conversion claim "does not arise as a consequence of non-

4    compliance with pre-existing contract" and therefore is not barred under Defendants' theory.

5    Plaintiffs allege that JFC Tobacco took products that Grateful Papers owned without

6    compensation.  FAC ¶ 144-45.  Although Grateful Papers presumably purchased the products

7    under its PSA with JFC Tobacco, Defendants have not cited any provision of the PSA or any other

8    contract that would govern JFC Tobacco's rights to take product after Grateful Papers had

9    purchased it.  Defendants thus provide no support for their assertion that the "duties Defendants

10   allegedly owed to grateful were contractually defined."  The Court therefore finds that Plaintiffs

11   have plausibly pled that their damages arising from the alleged conversion "arose from a general

12   (non-contractual) duty not to cause harm."  *See TLS*, 2018 WL 1626100, at *13.

13          Defendants next argue that Plaintiffs' conversion claim fails under California law because

14   Plaintiffs have failed to plead a wrongful act.  Mot. 9.  Under California law "[c]onversion is the

15   wrongful exercise of dominion over the property of another."  *Lee v. Hanley*, 61 Cal. 4th 1225,

16   1240 (2015).  "The elements of a conversion claim are: (1) the plaintiff's ownership or right to

17   possession of the property; (2) the defendant's conversion by a wrongful act or disposition of

18   property rights; and (3) damages."  *Id.*  Defendants contend that Plaintiffs cannot show the second

19   element of conversion—"a wrongful act or disposition of property rights"—because the FAC

20   concedes that Grateful Papers assented to JFC Tobacco pulling its products and later sent invoices

21   for the products.  Mot. 9.

22          The Court finds that Plaintiffs have adequately pled a wrongful act.  Plaintiffs allege that

23   Defendants took products that Grateful Papers owned without compensation.  FAC ¶¶ 143-45.

24   Plaintiffs allege that Defendants promised to pay for the products but never did.  FAC ¶¶ 43, 46.

25   These allegations plausibly suggest that Defendants committed a wrongful act.

26          The Court finally addresses Defendants' arguments that Plaintiffs' claim is "barred, in part,

27   by the applicable statute of limitations" and is implausible because some of the alleged diversions

28   occurred before JPG Herbals existed.  Mot. 10.  Defendants concede that at least some of the

alleged diversions occurred within any relevant statute of limitations and after JPG Herbals was formed.  *Id.*  Thus, neither argument provides a basis to dismiss Plaintiffs' conversion claim in its entirety and therefore do not provide a basis for dismissing the claim.

The Court finds that none of Defendants' theories demonstrates that Plaintiffs have failed to plausibly allege a claim for conversion.  Accordingly, Defendants' motion to dismiss this claim is DENIED.

### e.   Claims 6 and 7:  Promissory Estoppel

Plaintiffs assert two promissory estoppel claims "in the alternative" to their claims for breach of the PSA and breach of the Employment Agreement, respectively.  *See* FAC ¶¶ 160, 168. Plaintiffs assert these claims "in the event that [the relevant] amendments or modifications are determined to be unenforceable or void."  *See id.*

Defendants move to dismiss these claims on the basis that Plaintiffs' breach of contract claims fail and "Plaintiffs cannot plead [their] 'in the alternative' equitable claims (which are not recognized by Puerto Rico law anyway) to avoid the parties' express, binding, and enforceable agreement."  Mot. 7.  Plaintiffs respond that promissory estoppel is recognized under Puerto Rico law and that they have adequately pled the elements of the claim under both Puerto Rico and California law.  Opp'n 17.

During oral argument Plaintiffs conceded that their complaint does not allege that there was no contract governing the relevant behavior, and thus the Court could dismiss their promissory estoppel claims.  *See* Tr. 16:15-24, ECF No. 99.

Accordingly, Defendants' motion to dismiss Plaintiffs promissory estoppel claims is GRANTED.  Because Plaintiffs have had multiple attempts to plead these claims and the Court finds that amendment would be futile, the claims are dismissed WITHOUT LEAVE TO AMEND.

### f.   Claim 8:  Breach of Implied Covenant of Good Faith and Fair Dealing

Plaintiffs allege that JFC breached the implied covenant of good faith by terminating the PSA and refusing to pay commissions on certain sales under the Employment Agreement.  *Id.* ¶¶ 180-82.

Defendants move to dismiss this claim on different grounds depending on whether the

United States District Court
Northern District of California

Court applies Puerto Rico or California law.  Defendants argue that Plaintiffs' claim should be dismissed under Puerto Rico law because Plaintiffs' breach of contract claims fail and "Plaintiffs cannot plead [their] 'in the alternative' equitable claims (which are not recognized by Puerto Rico law anyway) to avoid the parties' express, binding, and enforceable agreement."  Mot. 7.  They argue that the claim fails under California law because their claims "do not go beyond the statement of a mere contract breach."  Mot. 14.  Plaintiffs respond that Plaintiffs' argument under Puerto Rico law is wrong because Plaintiffs' breach of contract claims are properly pled and should not be dismissed.  Opp'n 18.  Plaintiffs respond that Defendants' argument under California law is wrong because the FAC alleges that JFC abused its discretion under Section 3(b) of the Employment Agreement.  *Id.* at 19.  Defendant offers no argument in reply.

The Court first decides which law governs this claim.  Defendants argue that the claim is governed by Puerto Rico law.  *See* Reply 3-6.  Plaintiffs do not offer an argument about which law should apply to this claim.  *See* Opp'n 18-19.

The Court agrees with Defendants that this claim is governed by Puerto Rico law.  The Court found in Sections II.B.2.a.i and II.B.2.b.i of this order that the PSA and Employment Agreement are both governed by Puerto Rico law.  Accordingly, the Court finds that this related claim for breach of the implied covenant of good faith and fair dealing is also governed by Puerto Rico law.

Defendants have failed to show that Plaintiff's claim for breach of the implied covenant of good faith and fair dealing should be dismissed under Puerto Rico law.  Defendants' primary argument appears to be that the claims should be dismissed because Plaintiffs' breach of contract claims are being dismissed.  But the Court has denied Defendants' motion to dismiss those claims.  Defendants also appear to argue that Puerto Rico does not recognize claims for breach of the implied covenant of good faith and fair dealing.  But Plaintiffs provide no authority that supports this proposition.  The two cases they cite in their one-paragraph argument do not mention the doctrine at all.  *See Triangle*, 52 F.4th 24; *Borschow*, 96 F.3d 10.  Accordingly, the Court finds that Defendants have failed to show that Plaintiffs' claim should be dismissed.

Defendants' motion to dismiss Plaintiffs' claim for breach of the implied covenant of good

1    faith and fair dealing is DENIED.

2              **g. Claim 9:  Declaratory Judgment**

3              Plaintiffs seek "a declaration that the Product Supply Agreement remained in full force and

4    effect through December 14, 2022." FAC ¶ 191.

5              JFC argues that the Court should dismiss Plaintiffs' declaratory judgment claim because it is

6    duplicative of Plaintiffs' claims for breach of the Product Supply Agreement and promissory estoppel.

7    Mot. 15.  Plaintiffs oppose, arguing that Plaintiffs would benefit from a declaration of no misconduct

8    from this Court.  Opp'n 19-20.

9              Declaratory relief is meant to resolve uncertainties and disputes that may lead to future

10   litigation.  *See U.S. v. Washington,* 759 F.2d 1353, 1356–57 (9th Cir.1985).  "A claim for declaratory

11   relief is unnecessary where an adequate remedy exists under some other cause of action." *Rael v.*

12   *Pantoja*, 20-cv-01932-RMI, 2022 WL 624445, at *5 (N.D. Cal. Mar. 3, 2022) (quoting *Mangindin v.*

13   *Wash. Mut. Bank*, 637 F. Supp.2 d 700, 707 (N.D. Cal. 2009)).  Thus, "[w]here a claim for declaratory

14   relief is merely duplicative of other causes of action asserted by a plaintiff, dismissal is proper." *Id.*

15   (citing *Swartz v. KPMG LLP*, 476 F.3d 756, 765-66 (9th Cir. 2007)).

16             The Court finds that Plaintiffs' declaratory judgment claim should be dismissed because

17   the claim is duplicative of Plaintiffs' claim for breach of the PSA.  Plaintiffs seek "a declaration that

18   the Product Supply Agreement remained in full force and effect through December 14, 2022."  FAC

19   ¶ 191.  But if Plaintiffs are successful under their claim for breach of the PSA, they will effectively

20   receive this remedy because that claim asks the Court to determine whether Plaintiffs breached the

21   PSA by terminating it early.  *See* FAC ¶ 124.  Plaintiffs' claim for declaratory judgment is thus

22   unnecessary here because an adequate remedy exists under Plaintiffs' claim for breach of the PSA.

23             As Plaintiffs have had multiple attempts to plead this claim and amendment would be futile,

24   Defendants' motion to dismiss Plaintiffs' declaratory judgment claim is GRANTED WITHOUT

25   LEAVE TO AMEND.

26   **III.    ORDER**

27             For the foregoing reasons, IT IS HEREBY ORDERED that Defendants' motion to dismiss

28   is:

United States District Court
Northern District of California

24

1.   DENIED as to the claim for breach of the Product Supply Agreement (Claim 1);

2.   DENIED as to the claim for breach of the Employment Agreement (Claim 2);

3.   GRANTED WITHOUT LEAVE TO AMEND as to the claim for account stated (Claim 3);

4.   DENIED as to the claim for conversion (Claim 4);

5.   GRANTED WITHOUT LEAVE TO AMEND as to the claims for promissory estoppel (Claims 6 and 7);

6.   DENIED as to the claim for breach of the implied covenant of good faith and fair dealing (Claims 8);

7.   GRANTED WITHOUT LEAVE TO AMEND as to the claim for Declaratory Judgment (Claim 9).

Dated:  August 7, 2023

_____

BETH LABSON FREEMAN
United States District Judge